ALD-333                                                        **NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-1815
_____

UNITED STATES OF AMERICA

v.

AROBERT C. TONAGBANUA,
                    Appellant

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Crim. No. 1-14-cr-00098-001)
District Judge: Noel L. Hillman

_____

Submitted for Possible Summary Action
Pursuant to Third Circuit LAR 27.4 and I.O.P. 10.6
August 10, 2017

Before: MCKEE, JORDAN and RESTREPO, Circuit Judges

(Opinion filed: August 29, 2017)
_____

OPINION*
_____

PER CURIAM

     Arobert C. Tonagbanua appeals from an order of the District Court denying his

petition for writ of error coram nobis, 28 U.S.C. § 1651(a).  For the reasons that follow,

we will summarily affirm.

Tonagbanua, an attorney and shareholder with the law firm of Dickie McCamey, defrauded the firm and the firm's clients between 2008 and 2012 by inserting the names of clients into civil asbestos complaints to make it appear as if they had been named defendants and then working those cases, and billing those clients, as if they had actually been sued. Tonagbanua was charged by Information in the United States District Court for the District of New Jersey with one count of wire fraud, in violation of 18 U.S.C. § 1343. He pleaded guilty, and, in doing so, knowingly waived his right to a direct and collateral appeal. At sentencing, the loss and restitution were determined based on the firm's "hard costs" incurred in identifying and correcting the fraud, as follows: (1) $110,411.30 in professional fees paid to forensic accountants, ethics attorneys and others hired by the firm to remedy the situation; (2) $140,202.62 in cost reimbursements for expenses incurred in defending the matter, including travel to depositions, copying costs, etc.; and (3) $100,000 in settlement funds which were charged to three fraudulent files, for a total of $350,643.92. This determination was to Tonagbanua's advantage because the firm's loss, in its view, exceeded $1.2 million. Tonagbanua was sentenced to a term of imprisonment of 24 months, which was at the bottom of the Guidelines range, and three years of supervised release. In addition, he was ordered to make restitution in the specific amount of $232,643.92. (He had already made partial restitution in the amount of $118,000.)

Tonagbanua obtained new counsel and filed a notice of appeal. The Government moved to enforce the appellate waiver. In his counseled response to the Government's motion, Tonagbanua argued that enforcing the appellate waiver would work a

2

miscarriage of justice in his case because the District Court recalculated an offense level of 22, instead of 20 as prescribed by the parties' agreement as to the loss amount, and when the Court then granted a five-level downward variance the offense level decreased to only a 17, rather than the 15 it would have been had the Court used an offense level of 20. He also argued that his counsel, Michael Miller, was constitutionally ineffective for failing to investigate and argue that the settlements of $100,000 were legitimate and should not have been included in the $350,643.92 loss amount. We granted the Government's motion to enforce the appellate waiver and dismissed the appeal, see United States v. Tonagbanua, C.A. No. 16-2534. The mandate issued on August 3, 2016 and Tonagbanua did not seek review in the U.S. Supreme Court.

Tonagbanua is currently serving his term of imprisonment. On December 19, 2016, Tonagbanua, through his same appellate counsel, filed a petition for writ of error coram nobis pursuant to 28 U.S.C. § 1651(a), arguing that the restitution order should be reduced by the $100,000 in settlement funds because those funds were paid out in non-fraudulent files; and that trial counsel Miller did not adequately challenge the matter of restitution at sentencing. Tonagbanua argued that coram nobis may be used to attack a restitution order, citing for authority Barnickel v. United States, 113 F.3d 704, 706 (7th Cir. 1997) (noting court's approval of "use of writ of error coram nobis to challenge restitution order that was based on inaccurate information"), and Kaminski v. United States, 339 F.3d 84, 90 (2d Cir. 2003) (recognizing "[t]he possible existence of coram nobis" to challenge restitution, but emphasizing that "coram nobis can relieve an

3

individual of the continuing noncustodial effects of a criminal conviction only when *fundamental errors* were made") (Calabresi, J., commenting separately).

The Government answered the petition, arguing that coram nobis relief was not proper under the circumstances of Tonagbanua's appellate waiver and because he failed to preserve the restitution issue at sentencing. On the merits of the claim, the Government argued that Tonagbanua could not satisfy his heavy burden to show that he was entitled to coram nobis relief: Tonagbanua understood that the $100,000 settlement funds were included in the requested restitution, and he did not ask the Court to subtract those monies from the restitution order because he knew that he had negotiated a favorable plea deal, which excused him from paying the entire $1.2 million loss.

In an order entered on April 3, 2017, the District Court denied the coram nobis petition on the grounds that: (1) Tonagbanua's appellate waiver included petitions for writ of error coram nobis; (2) even apart from the appellate waiver, he waived the restitution issue at sentencing; (3) he failed to satisfy at least two of the requirements for relief under coram nobis, particularly, the requirement that he show that the error asserted was fundamental in nature and the requirement that he have no remedy for the alleged defect at trial; and (4) Miller's performance was not deficient because Tonagbanua knew and agreed that the $100,000 in settlement funds were included in the restitution contemplated by the plea agreement and were direct consequential damages suffered by the firm as a result of his criminal conduct.

4

Tonagbanua appeals pro se.[1] We have jurisdiction under 28 U.S.C. § 1291. Our Clerk advised the parties that the Court might take summary action pursuant to Chapter 10.6 of the Court's Internal Operating Procedures and Third Circuit Local Appellate Rule 27.4. The parties were invited to submit argument in writing and they have done so. In his summary action response, Tonagbanua argues, in pertinent part, that (1) his appellate waiver does not preclude the assertion of a meritorious ineffective assistance of counsel claim in a coram nobis petition, see United States v. Shedrick, 493 F.3d 292, 298 (3d Cir. 2007); (2) his trial counsel was ineffective in failing to fully investigate the matter of the $100,000, and had he properly done so, the firm would not have "incorrectly" reimbursed its clients; and (3) the District Court erred in concluding that his trial counsel was not constitutionally ineffective. The Government sought leave to file its summary action response out-of-time, a motion the Clerk granted. We decline Tonagbanua's request to reject the Government's summary action response as untimely filed.

We will summarily affirm the order of the District Court because no substantial question is presented by this appeal, Third Circuit LAR 27.4 and I.O.P. 10.6. Federal courts have authority to issue a writ of error coram nobis under the All Writs Act, 28 U.S.C. § 1651(a); United States v. Morgan, 346 U.S. 502, 511 (1954). Coram nobis generally is used to attack allegedly invalid convictions which have continuing consequences, when the petitioner has served his sentence and is no longer "in custody" for purposes of 28 U.S.C. § 2255. See United States v. Stoneman, 870 F.2d 102, 106 (3d

---

[1] The record reflects that Tonagbanua consented to disbarment.

Cir. 1989). Tonagbanua seeks to use it here because courts have held that a restitution order cannot be challenged in a § 2255 motion, either directly or indirectly through a claim of ineffective assistance of counsel, see, e.g., United States v. Thiele, 314 F.3d 399, 402 (9th Cir. 2001), and because other courts have approved its use in these circumstances, see Barnickel, 113 F.3d at 706; Kaminski, 339 F.3d at 90. He argues further that, although he is still "in custody," it makes no sense for him to postpone his coram nobis restitution challenge until he is released from his sentence, in view of the fact that he cannot in any event resort to § 2255.

We agree with the District Court that Tonagbanua's appellate waiver includes petitions for writ of error coram nobis, and that, even apart from the appellate waiver, he failed to satisfy the requirements for coram nobis relief. Use of the writ is appropriate to correct errors for which there was no remedy at the time of trial and where "sound reasons" exist for failing to seek relief earlier. Stoneman, 870 F.2d at 106 (quoting Morgan, 346 U.S. at 512). The error asserted by the petitioner must also be of the "most fundamental character." Id. See also Mendoza v. United States, 690 F.3d 157, 159 (3d Cir. 2012) (noting that coram nobis remedy is rarely necessary or appropriate). Collateral appeal waivers are enforceable provided that they are entered into knowingly and voluntarily and that their enforcement does not work a miscarriage of justice. United States v. Mabry, 536 F.3d 231, 237 (3d Cir. 2008). Courts apply the miscarriage of justice exception sparingly. See United States v. Castro, 704 F.3d 125, 135 (3d Cir. 2013).

6

Here, Tonagbanua could have challenged his restitution order on direct appeal had he not waived the right to appeal his sentence. Moreover, notwithstanding the direct appeal waiver, in that appeal, for which he had retained new counsel, Tonagbanua did not challenge his restitution order; to the contrary, he invoked the District Court's restitution findings to challenge the court's greater loss calculation under U.S.S.G. § 2B1.1. We enforced the direct appeal waiver and are not inclined to relieve Tonagbanua of the consequences of his knowing and voluntary collateral appeal waiver by allowing him now to pursue through coram nobis a challenge to a restitution order whose validity he did not challenge on direct appeal.

We further agree with the District Court that the error alleged here is not fundamental in nature. The Presentence Report stated that Tonagbanua negotiated $100,000 in fraudulent settlement funds against two of the firm's clients, New Jersey Plumbing Supply Co. and Conval, Inc., in three fraudulent cases involving plaintiffs George Diaz, Fred Jerolemon, and Phillip Kaplan. Miller raised the issue that the $100,000 was instead used for legitimate settlements. In response, the Government argued that, even assuming that the $100,000 was applied to settle legitimate matters, it was undisputed that the firm was still out that money, having repaid the clients and insurers on the Diaz, Jerolemon, and Kaplan matters. The District Court expressed concern about what specifically happened to the $100,000; the parties were unable to give a full accounting. Miller withdrew his objection, stating that he did not dispute that the firm reimbursed the clients and insurers. Ultimately, the Court accepted the

7

representation of the firm that the money had been obtained as part of the fraudulent scheme and that the firm had repaid the money to their clients and their clients' insurers. The record further reflects that Miller believed that Tonagbanua would have incurred far greater exposure on restitution (in that the firm had asserted a loss of $1.2 million) had he contested the $100,000.

Under all of these circumstances, Miller's performance does not establish that enforcing the collateral appeal waiver here would work a miscarriage of justice or that the alleged error – inclusion of the $100,000 in the restitution order – was improper, let alone fundamental, in nature. Miller's fear that an evidentiary hearing on restitution might backfire on Tonagbanua was not unreasonable, and Tonagbanua knew that the $100,000 in settlement funds were included in the restitution contemplated by the plea agreement. His claim now, that the restitution order could be even lower and that Miller could have done more to challenge the firm's calculation of the "hard costs" incurred in identifying and correcting his fraud, does not justify coram nobis relief, just as the District Court concluded.

For the foregoing reasons, we will summarily affirm the order of the District Court denying the petition for writ of error coram nobis.